IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GABRIEL DESPRES | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF PITTSBURGH, OFFICER | ) | **JURY TRIAL DEMANDED** |
| STEPHEN MATAKOVICH, Individually, and | ) | |
| LANDMARK EVENT STAFF SERVICING, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff GABRIEL DESPRES, by and through his attorneys, TIMOTHY P. O'BRIEN, MARGARET S. COLEMAN, and the LAW OFFICES OF TIMOTHY P. O'BRIEN and submits the following Complaint in Civil Action, and in support thereof avers as follows:

## PLAINTIFF'S FRCP 8 STATEMENT OF THE CLAIM

1.      In November of 2015, Defendant Stephen Matakovich, a Sergeant and Pittsburgh police force veteran with a documented history of abusive conduct toward citizens and fellow officers, was videotaped beating the Plaintiff, 19-year-old college student Gabriel Despres.  Despres was unarmed, defenseless and posed no threat of harm to Matakovich or anyone else. Matakovich followed his unprovoked attack on Despres by filing false felony aggravated assault charges against him.

This lawsuit contends that Matakovich's conduct was part of a pattern and practice of City of Pittsburgh Police officers unnecessarily escalating interactions with citizens,

using excessive force where minimal or no force is needed and then intentionally fabricating false criminal charges against their victims to cover up or justify their actions. This lawsuit further contends that Matakovich's unprovoked attack on Despres was the direct result of the City of Pittsburgh's knowledge of and failure to address this routine conduct by its officers. The City of Pittsburgh was aware of numerous specific instances of this type of conduct by its police officers, including Matakovich, and not only failed to take disciplinary or remedial action, but in many instances rewarded the officers with promotions.

The Plaintiff's constitutional claims are brought pursuant to the 4th amendment protecting citizens from unreasonable searches, seizures, excessive force, and the filing of false criminal charges, and pursuant to the 14th amendment, protecting citizens from the government's deliberate indifference to the violation of citizens' constitutional rights. Plaintiff also asserts common-law tort claims against both Matakovich and Landmark Security, the company responsible for security at Heinz Field, where the assault occurred.

## **JURISDICTION**

2.     This Court has jurisdiction over the Plaintiff's claims against the above-referenced Defendants pursuant to 28 U.S.C. §1343, and/or 28 U.S.C. §1331. This court has pendent jurisdiction over Plaintiff's common law claims.

## **PARTIES**

3.     Plaintiff, Gabriel Despres, is an adult individual residing in the state of Pennsylvania. At all times relevant, Plaintiff was a business invitee of Defendant Landmark

4.      The City of Pittsburgh is a municipality within the Commonwealth of Pennsylvania with a principal place of business located at 414 Grant Street, Pittsburgh, Pennsylvania 15219, which, at all times relevant hereto, was authorized to and did operate and maintain a police department.

5.      At all times relevant hereto, Defendant City of Pittsburgh was acting by and through its duly-authorized agents, employees and/or assigns, its appointed Bureau of Police, Chiefs of Police, and Command Staff officials, including Deputy Chiefs, Assistant Chiefs   and Commanders who were then and there acting in accordance with custom, policies and/or practices of the City of Pittsburgh Bureau of Police and who were acting within the course and scope of their employment and under the color of state law.

6.      At all times relevant hereto, and prior to the events in this case, the Defendant City of Pittsburgh was on notice of repeated instances of City of Pittsburgh police officers using unnecessary and/or excessive force, and then initiating false criminal charges to justify the use of such force and/or otherwise filing false Affidavits of Probable Cause, including prior instances by Defendant Matakovich, and/or Matakovich's subordinates, and despite such knowledge failed to take appropriate action, including but not limited to, referral for criminal prosecution, appropriate discipline, and/or retraining.

7.      Defendant Matakovich is an adult individual residing in the City of Pittsburgh, who at all times relevant hereto, was acting under color of state law in his capacity as a City of Pittsburgh Police Officer, who was then and there acting in accordance with the custom, policies and/or practices of the Defendant City of Pittsburgh.   This Defendant is sued in his individual capacity.

8.      Landmark Event Staff Servicing, Inc. is a corporation doing business in Allegheny County, PA, with its offices at 1501 Reedsdale Street, Suite 204, Pittsburgh, PA 15233, hereinafter referred to as "Landmark."

9.      At all times relevant, Landmark was acting by and through its duly-authorized agents, assigns, and/or employees who were then and there acting within the course and scope of their employment.

10.     Landmark owed to Gabriel Despres a duty of care as a guest at its facility, and as a business invitee, to exercise (a) reasonable care, to know or discover any unreasonable risk of harm to its "guests"; (b) expect that the guest will not discover or realize the risk or fail to protect themselves from the risk; and (c) exercise reasonable care to protect against the danger.

## FACTUAL ALLEGATIONS

11.     On November 28, 2015, Plaintiff was at Heinz Field (hereinafter "Stadium") as a business invitee for the purpose of attending the Aliquippa v. Thomas Jefferson WPIAL playoff football game scheduled to be played at the Stadium.

12.     Because he had been drinking, Plaintiff gave the keys to his truck to a friend who had accompanied him, so that his friend, as the designated driver, could then drive the both of them home upon the completion of the game.

13.     At some point prior to entering the Stadium, Plaintiff became separated from his friend, who entered the Stadium without Plaintiff.

14.     Because Plaintiff appeared intoxicated, his subsequent attempts to enter the Stadium were denied by Landmark's security personnel. (hereinafter security personnel)

15.     At all times relevant, the security personnel knew, should have known, and/or were otherwise on notice, that business invitees attending the Stadium event were likely to have consumed alcoholic beverages, and as a result were also likely to be intoxicated.

16.     Plaintiff informed the security personnel that he wanted to find his friend and, if not permitted to stay in the Stadium, to at least be allowed to enter the Stadium to retrieve the keys to his truck so that he could wait in the truck for the game to be completed.

17.     Plaintiff was intoxicated, but he was not aggressive, belligerent, or violent, nor did he pose a threat of harm to the security personnel or anyone else.

18.     The security personnel made no effort to assist Plaintiff in locating his friend and/or to retrieve the keys to his vehicle.  Instead, Plaintiff was ordered to leave.

19.     When Plaintiff questioned why he had to leave, the security personnel summoned Defendant Matakovich, who was inside the Stadium working a uniformed secondary employment security detail.

20.      Plaintiff was then ordered by the security personnel to remain where he was until Matakovich arrived.  Plaintiff complied with that order.

21.     When Matakovich arrived, Plaintiff attempted to explain to him why he wanted to enter the Stadium.

22.     In his interaction with Matakovich, Plaintiff was not aggressive, belligerent, or violent, nor did he threaten any harm to Matakovich;

23.     In his interaction with the Plaintiff, Matakovich was confrontational, shouted profanities at the Plaintiff, and threatened Plaintiff with physical harm;

24.     Despite Plaintiff's explanation, Matakovich ordered Plaintiff to leave the area;

25.     Plaintiff complied with Matakovich's order and had walked several feet away from Matakovich when Matakovich taunted the Plaintiff, shouting at him "You're not in Butler County, you're in the big city".

26.     Plaintiff in response, turned to look at Matakovich, who, then, without provocation, and without any reason to do so, attacked the Plaintiff, violently striking him in the chest and knocking him to the ground.

27.     Once on the ground, Matakovich continued his unprovoked attack on the Plaintiff, striking him in the nose, face, and head.

28.     Matakovich continued with his attack on the Plaintiff, until one of the security personnel told him, "That's enough", at which point Matakovich relented.

29.     Matakovich arrested Plaintiff, handcuffed him, and falsely charged him with several criminal offenses, including felony aggravated assault on a police officer.

30.     In support of the felony aggravated assault charges, Matakovich prepared an Affidavit of Probable Cause which contained material false allegations, including, but not limited to: that plaintiff "bladed his body", "clenched his fists", that he "lunged" towards Matakovich, that he "came back towards" Matakovich, that he "punched" Matakovich in the chest, and Plaintiff was "pulling" Matakovich "on top of him".

6

31.     The Affidavit of Probable Cause prepared by Matakovich was intended to make it appear as if Plaintiff was aggressive, violent, and had attacked Matakovich, all of which was false.

32.     These false allegations were made for the purpose of justifying Matakovich's unnecessary and excessive use of force against the Plaintiff.

33.     At all times relevant, Matakovich was aware that there was a video which recorded his unprovoked attack on Plaintiff.  Matakovich, however, failed to disclose its existence prior to the filing of a false criminal charges against the Plaintiff – up, through, and including the first date scheduled for the preliminary hearing on such charges.

34.     After the video of the November 28, 2015 events surfaced, the Allegheny County District Attorney's Office voluntarily withdrew the false aggravated assault charges filed against the Plaintiff.

35.     At all times relevant, the security personnel knew that Plaintiff was not aggressive or violent, and that he had not attacked Matakovich, as alleged.

36.     At all times relevant, the security personnel knew that Matakovich's aggravated assault charges against the Plaintiff were false.

37.     At all times relevant, security personnel knew that there was a video of Matakovich's attack on the Plaintiff.

38.     At all times relevant, the security personnel did not disclose to other law enforcement officials who appeared on the scene that Matakovich had attacked the Plaintiff, that Plaintiff was not aggressive, violent, and had not attacked Matakovich, and further failed to disclose the existence of the video which recorded Matakovich's unprovoked attack on Plaintiff.

39.     At all times relevant, the security personnel knew that Plaintiff had not committed the criminal offense of defiant trespass, as such personnel knew that Plaintiff was leaving the area when he was ordered by them to remain where he was, pending Matakovich's arrival, and then, again, knew he was leaving the area as ordered by Matakovich when Matakovich attacked him.

## DAMAGES

40.     As a direct result of the conduct as hereinbefore described, Plaintiff suffered physical injuries in different parts of his body, including his face, head, neck, and back.

41.     As a direct result of the conduct as hereinbefore described, Plaintiff suffered severe emotional distress, embarrassment, and humiliation.

42.     As a direct result of the conduct as hereinbefore described, Plaintiff incurred attorneys' fees to defend against the false and malicious charges brought against him.

## NOTICE AND ACQUIESCENCE ALLEGATIONS

43.     Prior to the events of November 28, 2015, Defendant City of Pittsburgh was on notice that City of Pittsburgh police officers, including Defendant Matakovich, had, without cause, escalated nonviolent interactions with citizens resulting in the unnecessary and excessive use of force.  The officers then filed false criminal charges to justify the use of such unnecessary force, and to protect themselves from civil liability, by obtaining plea-bargains in the face of defending against serious, often felony-level, false criminal charges.

44.     Despite knowledge of such unconstitutional practices on the part of City of Pittsburgh police officers, Defendant City of Pittsburgh failed to take any action to prevent officers from engaging in such unconstitutional conduct. Officers who had engaged in such practices were not punished and, in many instances, were promoted to a higher rank.

45.     Prior to November 28, 2015, Defendant City of Pittsburgh had reason to know and was otherwise on notice of the following instances where City of Pittsburgh police officers had used unnecessary and excessive force and filed false serious criminal charges to justify such force.

### Stephen Matakovich

46.     Stephen Matakovich was hired by the City of Pittsburgh Bureau of Police in January of 1994.  He was promoted to the rank of Sergeant in 2001.

47.     Prior to November 27, 2015, Defendant City of Pittsburgh was on notice that Matakovich had engaged in abusive conduct and had exhibited grossly inappropriate behavior, exceedingly poor judgment and insubordination, including threatening physical harm toward a superior, threatening to "kick his ass" and using deadly force by firing numerous rounds into a vehicle killing an innocent passenger.

48.     Prior to November 27, 2015, David Wright, the City of Pittsburgh Bureau of Police Use of Force Expert, expressed concerns to Defendant City of Pittsburgh regarding inappropriate use of force by Matakovich, specifically strikes to the head.  Despite these warnings, Defendant Matakovich was never disciplined, reprimanded, counselled or retrained regarding use of force.

9

49.     Matakovich testified at a deposition on December 29, 2015, that it was his regular practice to insist that any criminal defendant whom he had arrested, plead guilty to a criminal offense in order to protect himself from civil liability.  He testified that he advised his subordinates to do the same.

50.     Prior to November 27, 2015, Defendant City of Pittsburgh was on notice that Matakovich was a "scheduler" for lucrative "secondary employment" assignments of other City of Pittsburgh police officers at bars and other establishments located on the South Side, giving him authority and influence far beyond his rank as a Sergeant within the Bureau of Police.

51.     Prior to November 27, 2015, Defendant City of Pittsburgh was  on notice that secondary employment "schedulers" created "favoritism" and "corrosive conflicts of interest".

52.     Prior to November 27, 2015, Defendant City of Pittsburgh was on notice that Defendant Matakovich, while performing secondary employment at Heinz Field, had assaulted one of Defendant Landmark's security personnel, and then charged that employee with false criminal offenses in order to justify such force and/or to use such charges as leverage to prevent the employee from filing a civil suit against Matakovich.

*David Williams v. City of Pittsburgh, et al*

53.     On September 1, 2014, David Williams, a Pennsylvania State Police trooper, was arrested and charged with serious felony offenses, including aggravated assault on police officers.

54.     In support of those charges, several City of Pittsburgh police officers, in official documents, including Affidavits of Probable Cause, incident reports, and

10

supplemental reports, made allegations which were later shown to be false by a video which recorded the actual events.

55.     Defendant Matakovich was the on-scene supervisor of the officers who completed the false reports and ordered them to meet to get their stories straight.

56.     Defendant Matakovich knew of the video which confirmed that officers under his supervision had filed false reports, but failed to disclose the existence of that video to the Command Staff and/or to initiate discipline of his subordinates.

57.     At all times relevant, Defendant City of Pittsburgh and/or members of the Command Staff viewed the video and knew that the officers had filed false reports in support of the false charges filed against Williams.

58.     At all times relevant, Defendant City of Pittsburgh knew that its officers had obtained a copy of the video but never reported its existence to the Command Staff.

59.     None of the officers who filed false reports and affidavits, etc. and/or who failed to disclose the existence of the video were ever punished or disciplined in any way.

60.     Officer Baker was the individual officer who filed the charges against Williams and the false Affidavit of Probable Cause.  Instead of being punished, he was promoted to the rank of Sergeant in 2015.

61.     Defendant Matakovich, who was the on-scene supervisor of the individual officers involved, ordered his subordinates to get their "story straight" and failed to disclose the existence of the incriminating video to Command Staff.  He was never punished or disciplined for such conduct.

62.     Officer Brendan Nee kicked Williams in the groin after he had been subdued and failed to include this information in any of his reports.  Rather than disciplining him,

his supervisors, directed him to file a "supplemental report" disclosing the kick - more than a year later, after Williams had filed a lawsuit.  At that time Nee, for the first time, claimed that he kicked Williams because he believed he had a gun.

63.    The officers made false allegations against Williams which were strikingly similar to the false allegations made by Matakovich against Despres, including that each "bladed" their bodies, "clenched" their fists and "lunged" at police officers.

64.    No officer was ever disciplined, counselled or retrained or otherwise subjected to any adverse consequences from Defendant City of Pittsburgh as a result of their conduct toward Williams.

### Anthony Kenney v. City of Pittsburgh, et al

65.    On December 10, 2012, Anthony Kenney was stopped by City of Pittsburgh police officers, removed from his car and hit repeatedly in the face and head by Officer Matthew Turko, including multiple strikes to the temple with a gun.  His partner, Robert Smith watched this occur without intervening.  Turko had no reason or justification for such force.

66.    Officers Turko and Smith prepared reports falsely alleging that the injuries sustained by Mr. Kenney were the result of extricating him from his vehicle, in the process of which he fell to the ground and struck his head.

67.    On July 16, 2014, a jury empaneled in the U.S. District Court for the Western District of Pennsylvania rejected the police officers' false allegations and specifically found that Turko had used excessive force and that Smith had failed to intervene to prevent the use of such force.

68.     During the course of the trial, an independent, third-party witness testified that she observed the officers striking Mr. Kenney about the head and face as he alleged.

69.     Despite the fact that an independent third-party witness corroborated Mr. Kenney's version of what occurred and despite the fact that a federal jury rejected the Defendant officers' false allegations, neither of the officers were ever disciplined.  To the contrary, Turko was promoted to Sergeant on March 3, 2015.

70.     At all times relevant, Defendant City of Pittsburgh knew that Smith and Turko had filed false reports, knew that an independent witness contradicted their false version of the events, and knew that a federal jury had rejected their false allegations. Nevertheless, no action was taken against these officers.  To the contrary, Turko was rewarded with a promotion less than nine months after the jury rendered its verdict against him.

### *Taylor Condarcure v. City of Pittsburgh, et al.*

71.     On February 28, 2010, Taylor Condarcure was seriously injured when he was subjected to excessive force by City of Pittsburgh Police Officer David Honick, who violently and unnecessarily punched him in the face.  Honick, in order to justify this unlawful use of force, falsely charged Mr. Condarcure with serious criminal offenses, including felony aggravated assault on a police officer.

72.     Officer Honick falsely alleged that the violent use of force was justified because Mr. Condarcure had aggressively shoved him when he refused to leave a nightclub upon Honick's command.

73.     Independent witnesses, unrelated to Mr. Condarcure, reported, however, that Condarcure had not assaulted Honick as alleged.

13

74.    Prior to trial, the Allegheny County District Attorney's Office withdrew the aggravated assault charges with prejudice.

75.    Before the incident involving Taylor Condarcure, the City of Pittsburgh had received numerous complaints of Officer Honick using excessive force, routinely followed by the filing of serious criminal charges to support such use of force.

76.    Former Chief Harper acknowledged in sworn testimony that the City of Pittsburgh was on notice of Honick's inappropriate use of force, specifically, delivering unnecessary and potentially deadly strikes to the face and head, and that action should have been taken to address it.  No such action was ever taken.

77.    At all times relevant, although the City of Pittsburgh was on notice of Honick's excessive use of force, routinely followed by the filing of serious criminal charges to justify such force, and despite its knowledge that objective witness testimony contradicted his version of events involving Mr. Condarcure, Defendant City of Pittsburgh has never disciplined Honick for such conduct.  To the contrary, Honick has been afforded preferred assignments, including secondary employment and assignments to SWAT.

### Christine Condarcure v. City of Pittsburgh, et al

78.    Following Officer David Honick's use of excessive force against Taylor Condarcure, Taylor's mother, Christine Condarcure, filed a complaint against Honick with the City of Pittsburgh Office of Municipal Investigations ("OMI").  On May 6, 2010, City of Pittsburgh Police Officer Anthony Scarpine retaliated against Ms. Condarcure for filing this complaint by falsely charging her with resisting arrest and witness intimidation.

79.    In support of the charges, Scarpine filed a false Affidavit of Probable Cause containing numerous blatantly-false accusations against Ms. Condarcure.   An OMI

investigation uncovered surveillance video which demonstrated that the Affidavit of Probable Cause was untrue.

80.     In a subsequent lawsuit, additional evidence was disclosed confirming that the Affidavit of Probable Cause prepared by Officer Scarpine contained patently untrue allegations, and that Scarpine, who claimed to have personally observed what was alleged in the Affidavit,   was asleep when the alleged events occurred.

81.     Despite conclusive knowledge that one of its officers had filed a patently false Affidavit of Probable Cause, neither the City of Pittsburgh Bureau of Police, nor any police official, initiated criminal proceedings against the officer.

82.     Officer Scarpine continues to be employed by the Defendant City of Pittsburgh where he was allowed to choose to be assigned to the warrant office where one of his duties is to review criminal complaints for accuracy.

### *Jordan Miles v. City of Pittsburgh, et al*

83.     On January 10, 2010, Jordan Miles, was severely beaten by three City of Pittsburgh police officers and falsely charged with serious criminal offenses including, but not limited to, aggravated assault on police officers.

84.     In support of the false charges filed against Mr. Miles, the officers made allegations that he "bladed" his body, intentionally elbowed one of the officers in the head and donkey-kicked another officer in the shins.

85.     On March 31, 2014, a jury impaneled in the United States District Court for the Western District of Pennsylvania, unanimously rejected the officers' false version of events and found that the officers did not have probable cause to arrest Mr. Miles on the

false charges filed against him, including the felony offense of aggravated assault on a police officer.

86.    Prior to the civil jury verdict on March 31, 2014, a district magistrate had dismissed the false criminal charges filed against Mr. Miles for lack of probable cause.

87.    Despite the fact that a federal civil jury rejected the Defendant officers' false allegations and found that Mr. Miles' arrest was without probable cause, and despite the fact that the district magistrate judge had thrown the charges out, none of the defendant officers were ever disciplined or punished.

88.    In addition, although not admitted into evidence at the time of trial, during discovery, it was disclosed that the defendant officers had engaged in similar conduct numerous times prior to the incident involving Mr. Miles.  Despite this evidence, the defendant officers were never subjected to any discipline, retraining, counselling or other administrative action.

89.    In addition, although not admitted at the time of trial, a third-party witness reported that one of the defendant officers had used racial slurs to describe Mr. Miles, pointing to racial bias as the reason for beating Mr. Miles.  Despite knowledge of these allegations, Defendant City of Pittsburgh made no effort to investigate or otherwise address those allegations.

### *Daniel Hacket v. City of Pittsburgh, et al*

90.    On March 15, 2008, Daniel Hackett, a CPA, and an individual who had never been charged  with or arrested for any criminal offense, was arrested by City of Pittsburgh Police Officer Edward Cunningham, tasered by that police officer, and

subjected to serious false criminal charges, including misdemeanor resisting arrest charges.

91.      Officer Cunningham made false allegations to justify his arrest of Mr. Hackett and the excessive and unnecessary use of a taser on Mr. Hackett.

92.      On December 4, 2008, Common Pleas Court Judge David Cashman found Mr. Hackett not guilty of the false criminal charges brought against him by Cunningham.

93.      Prior to the incident involving Mr. Hackett, the City of Pittsburgh had received other complaints concerning Cunningham's use of unnecessary and excessive force.

94.      Hackett subsequently filed civil lawsuit against the City of Pittsburgh and Cunningham, which the City of Pittsburgh settled for the sum of $155,000.00.

95.      Despite the fact that Cunningham's version of the events which he alleged to support the charges and the use of force was not credible, and despite the fact that Mr. Hackett was found not guilty, and despite a civil lawsuit which further exposed the lack of credibility in Cunningham's version of the events, Cunningham was never punished, disciplined, counseled or subject to any retraining.   Instead, he was rewarded with a promotion to Sergeant following this incident and another to Lieutenant in February, 2015.

### *Collins v. City of Pittsburgh*

96.      On September 21, 2006, three City of Pittsburgh Police officers, in plain clothes and driving an unmarked vehicle, improperly initiated a vehicle pursuit of Jeffery Collins for allegedly "splitting lanes" with his motorcycle on Fifth Avenue in Oakland.

97.      During the course of the ensuing stop, the officers physically assaulted Collins, slapped him in the chest several times and then swept his legs out from under

him while he was handcuffed, causing him to hit his head on a curb, lose consciousness and suffer a seizure.

98.     Collins spent several days in the ICU and required knee surgery as a result of the incident.  Collins was charged with fleeing and eluding, DUI and several traffic offenses.  The fleeing and eluding and DUI charges were dismissed.  The traffic offenses were not pursued.

99.     During litigation of Collins' civil action, the officers gave sworn testimony which directly contradicted the official incident report, contradicted each other's testimony, contradicted their own prior statements and was inconsistent with the injuries suffered by Collins.

100.    Despite conclusive and/or substantial evidence that these officers had violated Bureau policy, used excessive force and filed statements later contradicted by sworn testimony, the City of Pittsburgh did not prosecute, discipline, retrain, counsel or take any action whatsoever against these officers.

### Officer Bradley Walker

101.    The City of Pittsburgh Bureau of Police employed Police Officer Bradley Walker from 1993 until 2010.  During that time, Walker amassed over thirty documented complaints of excessive force.  These included, *inter alia*, numerous on and off-duty road rage incidents, as well as allegations that he hit a man so hard that he lost the use of his eye, beat a motorist in the head and placed a gun in his mouth, choked a pregnant women and knelt on her back, hit a juvenile in the head with a gun and reported that the boy had tripped, choked a woman, slammed her to the ground and sexually fondled and groped

her, broke a man's ankle by stomping on it during a routine traffic stop, choked his son and beat his wife.

102.    Former Chief of Police, Nathan Harper knew that Walker had a pattern of using excessive force, including choking and strikes to the head, and that his documented uses of excessive force should have resulted in his termination.  However, during his seventeen years on the force, the highest level of discipline he received was a one-day suspension.

103.    Defendant City Pittsburgh exhibited a pattern and practice of failing to adequately investigate complaints about Walker, failing to keep a record of the investigations it did conduct, failing to impose discipline when use of excessive force was confirmed, and failing to follow through with and/or arbitrarily reducing the severity of discipline of the rare occasions that it was ordered.

104.    In May of 2010, the Pennsylvania State Police criminally prosecuted Walker for an off-duty road rage incident in which he sideswiped another motorist's car and then went on a rampage choking the motorist, brandishing his firearm and threatening to shoot him, punching the driver's side, windshield and roof of the motorist's car with his bare fist and gun (cracking the driver-side window and windshield) and waving his firearm and shouting obscenities at other motorists.  After the Pennsylvania State Police charged Walker, he was terminated for "conduct unbecoming an officer."

105.    Despite knowledge of numerous previous incidents of misconduct and false reports to cover up this misconduct, Defendant City of Pittsburgh made no effort to criminally prosecute, terminate or even seriously discipline Walker until an independent agency stepped in and initiated criminal proceedings.

## CAUSES OF ACTION

## DESPRES V. CITY OF PITTSBURGH

## 14TH AMENDMENT SUBSTANTIVE DUE PROCESS CLAIM

106.    Plaintiff incorporates paragraphs 1 through 105, as if fully set forth herein.

107.    Defendant City of Pittsburgh's conduct, as hereinbefore described, violated Plaintiffs' 14th amendment substantive due process rights to be free from arbitrary, capricious, and deliberately indifferent conduct by a governmental entity and/or free from custom, policies, and practices amounting to the deliberate indifference to the violation of citizen's constitutional rights by police officers employed by the City of Pittsburgh.

108.    Plaintiff's 14th Amendment substantive due process claims are made actionable against the City of Pittsburgh pursuant to the Civil Rights Act of 1871, as amended, 42 U.S.C.§. 1983.

WHEREFORE, Plaintiff requests judgment against the City of Pittsburgh for compensatory damages and for the recovery of costs and attorney's fees, and such other relief as the Court deems just and equitable under the circumstances

## DESPRES V. LANDMARK EVENT STAFF SERVICING INC., (LANDMARK)

## COMMON LAW INTENTIONAL TORT AND NEGLIGENCE CLAIMS

109.    Plaintiff incorporates paragraphs 1 through 108, as if fully set forth herein.

110.    At all times relevant, Defendant Landmark was aware, and/or was on notice, and/or knew, or should have known, that Defendant Matakovich was not suitable to provide secondary employment police services at Heinz Field given his known history of abusive behavior and treatment of business invitees at such venue.

111.   At all times relevant, Defendant Landmark falsely reported that Plaintiff had committed the criminal offense of defiant trespass and/or that he had refused to leave the Heinz Field venue.

112.   At all times relevant, Defendant Landmark, falsely reported that Plaintiff had refused to leave the Heinz Field venue, when in fact, Landmark security personnel had detained him on property adjacent to such venue.

113.   At all times relevant, Defendant Landmark, had no reason, authority, or legal basis upon which to detain Plaintiff.

114.   At all times relevant, Defendant Landmark, knew or should have known, that Plaintiff was lawfully upon a thoroughfare open to the public, had a legitimate right to be at that location, and as a result, was not engaged in defiant trespass.

115.   At all times relevant, Defendant Landmark acted in concert with, encouraged, and/or acquiesced in Defendant Matakovich's actions culminating in Matakovich's physical assault on the Plaintiff and/or the filing of false criminal charges against him.

116.   At all times relevant, Landmark was negligent in the provision of security services provided in Heinz Field in and/or by:

> a)  failing to properly screen persons hired by it to provide secondary employment police services at venues under its control, when it knew, or should have known, that such failure to screen could result in physical harm to business invitees at the hands of personnel not suitable to provide the required police services;

21

b)  failing to properly train its security personnel in how to interact with and/or provide necessary services to intoxicated patrons, when it knew, or should have known, that its business invitees could be intoxicated, and that such failure to train could result in physical harm to such business invitees;

c)  failing to properly train its security personnel under what circumstances such staff should detain, restrict the movement of, and/or subject patrons to arrest, when it knew, or should have known, that such failure to train could result in physical harm to business invitees who had been improperly detained, restricted in their movement, and/or subject to false arrest; and

d).  failing to properly train its security personnel as to when, and under what circumstances, it should report that a patron has allegedly committed a criminal offense, when it knew, or should have known, that false reports of criminal activity could result in physical harm to business invitees falsely accused of such criminal acts.

WHEREFORE, Plaintiff requests judgment against Landmark for compensatory and/or punitive damages and for the recovery of costs and attorney's fees, and such other relief as the Court deems just and equitable under the circumstances.

**DESPRES V. MATAKOVICH**

**4TH AMENDMENT FALSE ARREST, EXCESSIVE FORCE, MALICIOUS PROSECUTION**

117.  Plaintiff incorporates herein paragraphs 1 through 116, as if fully set forth herein.

118.    Defendant Matakovich's conduct, as hereinbefore described, violated Plaintiff's Fourth Amendment rights to be free from unreasonable searches and seizures, the use of excessive and unreasonable force and false and malicious prosecution.

WHEREFORE, Plaintiff requests judgment against Matakovich for compensatory and/or punitive damages in a sum in excess of $50,000, and for the recovery of costs and attorney's fees, and such other relief as the Court deems just and equitable under the circumstances.

## DESPRES v. MATAKOVICH

## COMMON LAW FALSE ARREST, ASSAULT BATTERY, MALICIOUS PROSECUTION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

119.    Plaintiff incorporates all preceding paragraphs as if fully set forth herein.

120.    Defendant Matakovich's conduct, as hereinbefore described, subjected Plaintiff to common law assault, battery, malicious prosecution and intentional infliction of emotional distress.

WHEREFORE, Plaintiff requests judgment against Matakovich for compensatory and/or punitive damages in a sum in excess of $50,000, and for the recovery of costs and attorney's fees, and such other relief as the Court deems just and equitable under the circumstances.

Respectfully submitted

/s/Timothy P. O'Brien
Timothy P. O'Brien, Esq.
PA ID #22104

/s/ Margaret S. Coleman
Margaret S. Coleman, Esq.

PA ID #200975

Law Office of Timothy P. O'Brien
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA  15219
(412) 232-4400

Attorneys for Plaintiff